CLYDE MILLER v. THE STATE.

No. 12312. Delivered February 20, 1929.

The opinion states the case.

*Fitzgerald & Grundy* of Memphis, and *Weeks, Morrow, Francis & Hankerson* of Wichita Falls, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—Offense, murder; penalty, twenty-five years in the penitentiary.

Omitting its formal parts, the indictment charges that appellant "did then and there unlawfully and voluntarily kill Bruce Collier, by then and there hitting him, the said Bruce Collier, with a bottle."

The facts tended to show that deceased on Christmas Eve Night came to the place of business run by appellant's brother in a drunken condition and there raised a disturbance with appellant's brother and at about the termination of this difficulty appellant appeared and struck deceased on the head with a bottle, described by some of the witnesses as about the size of a soda pop bottle and by others as about the size of a Nehi or beer bottle. It caused a slight skin abrasion on the forehead and some nose bleeding. Some of the witnesses described deceased as thereafter being able to walk and as wanting to fight. He was taken away by his two companions and in his own car and left alone near a railroad crossing in the back seat lying down. He had apparently been unable to speak to them for some time previous. Whether this was due to a drunken stupor or to the blow seems to have been an issue. An hour or so later his automobile was struck on a railroad crossing nearby and he was thereafter found in same with several fresh wounds on his head. It

was the theory of the State that he had been placed on this crossing by the appellant after his death. The record is in an unsatisfactory condition. There seems an entire absence of any medical expert testimony as to whether or not the symptoms exhibited by deceased as testified to by witnesses were those which might be expected from a blow on the head, such as deceased had received. An issue seems clearly made as to the cause of death. The blow by appellant was struck with a weapon not per se deadly, no better description of which appears than that it was about the size of a soda pop or Nehi or beer bottle.

The Court in his charge nowhere required the jury to find the existence of an intent to kill before a conviction could be had and this, the appellant contends, was made necessary by the facts already recited. The effect of appellant's bill of exception is to pointedly present to this Court for the first time apparently, the question of whether or not under the new definition of murder passed by the Fortieth Legislature such a charge is demanded, or, stated other-wise, whether under its present definition and in view of the repeal of Chapter 18 of the Penal Code, an intent to kill is now an essential ingredient of murder. Under the law as it existed prior to the repeal of Arts. 1261 to 1264, inclusive, embraced in Chapter 18 of the Penal Code, it was well settled that where, as under the facts of the instant case, the weapon by which a homicide was committed was not a deadly one, it became indispensably necessary to submit the issue of a lack of intent to kill. See Collins v. State, 299 S. W. 403; Hoover v. State, 87 Tex. Crim. Rep. 372; Griffin v. State, 40 Tex. Crim. Rep. 312; Washington v. State, 53 Tex. Crim. Rep. 483; Crow v. State, 55 Tex. Crim. Rep. 202; Merka v. State, 82 Tex. Crim. Rep. 569. It seems inferable that the purpose of the Legis-lature in originally passing Arts. 1261 to 1264, inclusive, was to make sure that an unlawful homicide would not receive the meaning given to it by the common law. Under the old English common law an intent to kill was not an essential ingredient of murder. Not only was it murder to kill another, though the intent was merely to severely hurt, but homicide unintentionally committed in pursuit of a felony was murder and punishable with death. Not only so, but such a definition of murder came out of an age and a country that then made every felony punishable by death.

What was formerly two species of an unlawful homicide was combined by the Fortieth Legislature into one definition, which is as follows:

"Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing." Art. 1256, P. C.

Does such a definition exclude an intent to kill as an essential ingredient of the crime of murder? The word "voluntary" was formerly a part of the definition of manslaughter and a definition of same was approved by Judge Hurt in the case of Thompson v. State, 24 Tex. Crim. Rep. 386. Discussing the very question at issue here, the following language is used:

"This is a conviction for manslaughter. If it was a voluntary homicide, then the conviction is correct; for the facts surrounding the killing show such an offense. But, suppose the intent to kill was wanting, under a state of facts which would make the homicide manslaughter—if the accused intended to kill—of what offense would the accused be guilty, if death ensued?

"To constitute manslaughter, there must be a voluntary killing. Webster defines the word 'voluntary' thus: 'Done by design, or intention; purposed, intended; as, if a man kill another by lopping a tree, it is not voluntary manslaughter.' If, then, the homicide cannot be manslaughter unless there was an intention to kill, strip the case of murder and self defense, of what offense would the party killing be guilty?

. . . . . . . . . . . . . . . . .

"Where a homicide occurs under sudden passion, by the use of means not in their nature calculated to produce death, in the absence of an intention to kill, the circumstances not showing an evil or cruel disposition, the party killing would not be guilty of the homicide, but, self defense apart, would be guilty of some grade of assault and battery"

"Words and Phrases" (Third Series) defines the word "voluntary" as follows:

"One of the accepted meanings of the word 'voluntary' is 'done by design or intention; purposed; intended.'" See also case of Crutchfield v. State, 10 S. W. (2d) 119, for definition of "voluntary."

It could be plausibly argued that the Legislature in choosing the word "voluntary" intended that it should supply what was repealed, as contained in Art. 1261, P. C. The word "voluntary" had been many times judicially defined prior to the enactment of our late

murder statute. It will be presumed that the Legislature by its use intended that its settled judicial interpretation would become its meaning in this statute and thus construed we have no difficulty in arriving at the final conclusion that an intent to kill is a necessary ingredient of the crime of murder. A voluntary killing simply means an intended killing. This view is somewhat strengthened, we think, by the failure of the Legislature to repeal Art. 695, C. C. P., reading in part as follows:

"The following offenses include different degrees:

"1. Murder, which includes all the lesser degrees of culpable homicide, and also an assault with intent to commit murder.

"2. An assault with intent to commit any felony, which includes all assaults of an inferior degree."

Under the provisions of this article a conviction for assault to murder or aggravated assault may be had under an indictment for murder. White v. State, 13 Tex. Crim. App. 260. It has always been held that one of the indispensable elements of assault to murder was a specific intent to kill. There has been left in existence by the Legislature a statute under which a conviction can be had for an offense which is within the terms of the murder statute but which in fact would have no existence unless there was present in the mind of the accused a specific intent to kill. There do exist cases, we think, in which it is not necessary to prove a specific intent to kill any further than is involved in the proof of certain facts, as the intentional infliction of serious bodily injury upon the person of another by the use of a weapon deadly per se, or a killing committed in the attempted perpetration of arson, burglary, etc. In such cases we can see no reason for giving the charge under discussion. The rule herein stated is, of course, based upon and limited by the facts of the instant case.

Finally we desire to say that in our opinion there would seem to be no valid reason for giving our present murder statute an original common law meaning, except as such may be implied from the action of the Legislature in repealing the articles of the Penal Code already mentioned. To do so would carry it back to the shadows of the mediaeval ages. We have no common law crimes. They are and must be statutory. An examination of the law of other states of the Union discloses that the rule as it anciently existed with respect to this question is no longer followed, and we follow the beaten pathway of an enlightened and humane jurisprudence in here announcing that under the instant facts an intent to kill was an essential in-

gredient of the offense charged, and an issue being made as to its existence, the Court erred in not submitting same to the jury.

The Court failed also to charge on aggravated assault. If there was lack of intent to kill, then we think a conviction for aggravated assault would be authorized under the specific terms of Art. 695 of the Code of Criminal Procedure, already discussed. This issue should be submitted.

The Court on another trial should further authorize an acquittal if there existed in the minds of the jury a reasonable doubt that the cause of the death of deceased was the blow, if any, struck by the appellant. This, because the State is bound to prove the allegations of the indictment beyond a reasonable doubt, and there is present in this record testimony which raises an issue sufficient to go to the jury as to the death of the deceased being due to causes other than those alleged. Betts v. State, 57 Tex. Crim. Rep. 389.

For the errors discussed, the judgment is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.