PEDRO GOMEZ v. THE STATE.

No. 13855.   Delivered January 7, 1931.
Reported in 34 S. W. (2d) 607.

The opinion states the case.

*E. B. Coopwood* and *Nye H. Clark,* both of Lockhart, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—Appellant was convicted in the District Court of Caldwell County of murder and his punishment fixed at three years in the penitentiary.

The appellant complains mainly of three matters in the record: (1) The failure of the Court to give a charge on the right of the appellant to defend his cousin against an assault on the part of the deceased and his brother, Cenovia Trevinio; (2) the refusal of the Court to submit the issue of aggravated assault and of the issue of the intent of the appellant to kill deceased; (3) because of the improper argument of the attorney for the State in his closing argument.

The witness, Luis Trinidad, cousin of the defendant, testified in substance as follows:   That he, the witness, had some trouble with the deceased and his brother, Cenovia, and had a fight with the two;

that at the time the fight started defendant was not present, but that during the fighting defendant came up to the scene of the difficulty, and that when the defendant came up to the scene of the difficulty, the deceased and his brother had the witness down on the ground; that the defendant asked why the two, deceased and his brother, were fighting the witness, and at this point the deceased and his brother stopped fighting the witness, turned upon the defendant and the deceased stated they could fight defendant too; that at this time witness saw a knife in the hands of the deceased and witness ran from the scene of the difficulty, leaving the three, defendant, deceased and his brother, Cenovia.

Defendant, testifying in his own behalf, testified in substance to the effect that he had only known the deceased and his brother a short time; that he had not seen either of them that night until they were fighting with his cousin, Luis Trinidad; that when he got to the scene of the fighting, deceased and his brother were fighting Luis Trinidad, and about the time he arrived on the scene they had thrown him on the ground and that defendant told them to behave, and that they then jumped on defendant; that Cruz Trevinio, the deceased, had a knife; that the defendant then jumped back and drew his knife after deceased had tried to strike defendant with a knife; that the defendant had a small pocket knife, which he gave to the officers; that after he drew his knife Cruz and defendant had a fight; that as he saw it, Cruz, the deceased, was trying to kill him and that he had to defend himself; that when deceased stopped fighting, defendant stopped; that the deceased walked off one way and the defendant the other; that he, the defendant, did know when he walked away during the fighting that defendant cut the deceased twice, but how and on what portion of the body, defendant did not know and that when deceased walked away, defendant did not know that the deceased was badly hurt.

According to this testimony it shows that any attack that may have been made by the deceased and his brother upon the cousin of the appellant had ceased before the homicide and the cousin had left and was not present when the deceased was cut by appellant, and the Court having given a full charge on the right of self-defense on the part of appellant from any attack, real or apparent, that may have been made upon him by deceased, and the evidence failing to show that any act on the part of the appellant was made in defense of or against any attack that was being made on his cousin by the deceased, we hold that there was no error on the part of the trial

court in failing to give a charge on the right of appellant to defend his cousin against any assault made by the deceased and his brother upon said cousin.

The question raised as to the refusal of the trial court to give to the jury a requested charge submitting the issue of aggravated assault and the issue as to whether the appellant cut the deceased with the intent to kill, raises a more serious question. Special charges were prepared and submitted to the trial court before his charge was read to the jury covering both issues, but were refused by the Court, and appellant also excepted to the failure of the Court to so charge in his exceptions to said charge.

The evidence shows that at the time of the homicide that both appellant and deceased were boys of about seventeen years of age and that appellant cut the deceased with an ordinary pocket knife, and that prior to said killing there had been no trouble or difficulty between them and in fact they were only slightly acquainted. The testimony of the appellant and that of the witness, Trinidad, set out above, in our opinion, together with the other facts and circumstances in evidence, raised the issue of lack of intent to kill and as under our present statute an intent to kill is an essential ingredient of the crime of murder, therefore when said issue is raised by the evidence, an instruction on aggravated assault is called for, and a failure to instruct on that issue in this case is in our opinion reversible error.

In the case of Bookman v. State, 16 S. W. (2nd) 125, on motion for rehearing, Judge Hawkins in passing upon the question of the appellant's objection in that case to the charge of the Court because it omitted any instruction on the law of aggravated assault, held the following to be the rule:

"The question that has given us most concern was appellant's objection to the charge because it omitted any instruction on the law of aggravated assault. It has been especially troublesome in view of the express repeal by the Legislature of articles 1261, 1262, 1263, and 1264 of the Penal Code."

Then he quotes said articles and in further passing upon the issue, states:

"If the state's evidence is to be believed, there is no doubt but that the injuries on deceased were inflicted in a most cruel manner and under circumstances which showed an evil and cruel disposition. It is difficult to bring ourselves to believe that the Legislature contemplated the full effect of the repeal of said articles, but only had in

mind their relation to the crime of 'manslaughter' which was eliminated by the same act of the legislature. Appellant denied the acts of violence, and at the same time asserted that he never at any time intended to kill his wife. There is no question but that the violence was committed by the use of means not in their nature ordinarily calculated to produce death. By the repeal of the articles in question the trial court was precluded from giving specific instructions thereunder, and likewise this court can no longer give them application. We must, therefore, the best we can, in the absence of the repealed articles, construe our present definition of murder, which is as follows: 'Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offence to negligent homicide or which excuse or justify the killing. Article 1256, P. C.'

"Intent to kill being absent, although death results, what offense, if any, would accused be guilty of? If the evidence raise the issue of lack of intent to kill, should the court instruct on aggravated assault? These questions were rather exhaustively considered in the recent case of Miller v. State, (Tex. Cr. App.), 13 S. W. (2d), 865, and the conclusion reached that under our present statute an intent to kill was an essential ingredient of the crime of murder, and that, when the issue was raised that such intent was wanting, an instruction on aggravated assault was called for. It follows that the failure of the court to instruct upon that issue in the present case was an omission which demands a reversal."

On the issue as shown by appellant's bills of exception Nos. 1 and 2 as to the alleged improper argument of the Assistant District Attorney, while delivering the closing argument to the jury in this case, as shown by the qualification to both of said bills of exception, the Assistant District Attorney in his closing argument used the following argument:

"Mr. Coopwood tells you that in his opinion that there is only one verdict that you can return in this case and that a verdict of not guilty, I want to say to you that in my opinion the fact that the defendant has filed a plea asking for a suspended sentence is an admission on his part that he is guilty."

The qualifications to both bills show that the defendant at the time in open court objected to said argument because the same was improper and calculated to prejudice the rights of the defendant, and that the Court at the time admonished counsel to desist from any

such argument and instructed the jury orally that the argument was improper and that in their deliberations they must not consider the same for any purpose. This argument has been held by this Court to be manifestly improper and reversible error where the Court has not promptly corrected same. Parker v. State, 232 S. W. 497; Tamaya v. State, 230 S. W. 146; Kemp v. State, 256 S. W. 264. The fact that said argument was persisted in and repeated the second time, as shown by said two bills of exception, after the trial court had admonished counsel to desist from such argument and after the court had orally instructed the jury that said argument was improper and that they must not consider the same for any purpose, raises a very serious doubt as to whether or not such argument being so obviously harmful and improper could be counteracted by instruction from the Court, and that this case should not be reversed upon this ground alone.

For the error mentioned, the judgment of the trial court is reversed and cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.