336

JACK DECKER V. THE STATE.

No. 14745.   Delivered January 27, 1932.
State's Rehearing Denied March 9, 1932.

The opinion states the case.

*Mark Smith* and *G. Goodwin Sweatt,* both of Waxahachie, for appellant.

*Archie D. Gray,* Criminal District Attorney, of Waxahachie, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for ten years.

The parties involved are negroes.   The homicide occurred on June 19th, 1930, at a negro barbecue. Appellant, his wife and son and the wife of deceased, Johnny Baldwin, had gone to the barbecue in appellant's car. Apparently appellant and deceased had been on friendly terms.   Immediately prior to the difficulty, appellant was repairing a flat tire on his automobile.   Witnesses for the state testified that appellant and deceased engaged in a fight, and that during the difficulty appellant cut deceased with a knife.   These witnesses said they heard no words between the parties prior to the difficulty.   There was nothing in the state's testimony showing any motive on the part of appellant for attacking deceased. It was in evidence that appellant had been drinking beer.   Witnesses for the state testified, in substance, that appellant ran up to deceased and

attacked him; that deceased got loose from appellant and walked a short distance away; that appellant ran after him and commenced cutting him with a knife; that deceased walked out into the road and fell to the ground; that deceased was unarmed. Deceased died several hours later in a hospital. It appears that a wound under the right arm caused his death, the physicians testifying that an artery had been severed. A witness for the state testified that deceased told him an hour and a half after the difficulty, in substance, that he had done nothing to provoke the attack upon him by appellant.

Appellant's testimony was, in substance, as follows: While he was repairing the flat tire on his car deceased approached the car, seized his (deceased's) wife, dragged her from the car and knocked her down. Two of the state's witnesses pulled deceased and his wife apart. Deceased then walked away as if he were going to leave. Discovering that his hat was gone, deceased made inquiry about it. Someone told deceased that his (deceased's) wife had his hat. Deceased's wife threw the hat across the road. When she did this deceased again attacked her with his fists. During this time appellant had continued to work on the tire. While deceased was beating his wife appellant's wife came to him and asked him to interfere, as she believed deceased was going to kill his wife. Appellant and deceased were good friends, and appellant thought that he could stop the fight by talking to deceased. He got up and went to the place where the fight was in progress, and asked deceased to desist. Deceased got up like he was going to leave, and appellant turned back toward his work. Instead of leaving the scene of the difficulty, deceased struck appellant on the side of the head with his fist and began fighting him. Appellant tried to get loose, but deceased continued to attack him. Believing that deceased was trying to kill him, he cut deceased on the right arm with a knife in an effort to stop his assault on him. Appellant did not continue the attack. He did not know at the time that he had seriously injured deceased.

The testimony of appellant's wife and son was substantially the same as that of appellant, except that the son testified to some details not included in appellant's testimony. We quote from the testimony of the son as follows: "I was down there, and the first thing I saw John Baldwin (deceased) jumped on his wife, and Nathan Jackson and Tom Rowland pulled him off of her, and he jumped on her again and commenced beating her and mama told papa to go and see if he could part them; and then it looked like just a regular fight—all fighting; that fight lasted just a little while; I saw the whole thing; just before the fighting started papa had been fixing a flat tire. Anna May Baldwin was sitting in the car just before John Baldwin jumped on her. * * * I did not hear papa say anything when he went around there, but then. they just had a 'ring fight'; the whole thing just came off then. When it was over with I

don't know what, happened, but John Baldwin was laying out there in the road; I do not know where papa was—I did not see him."

Witness for the state denied that deceased had attacked his wife.

Appellant placed in issue his general reputation for being peaceable and law-abiding. Witnesses for whom he had worked testified that his reputation in the respect mentioned was good. The state made no attempt to controvert the testimony of these witnesses.

The court submitted an instruction covering the law of self-defense, but failed to give any instruction touching the right of appellant to defend or protect the wife of deceased against an unlawful assault on the part of deceased. Appellant timely presented to the court a written requested instruction designed to cover the omission to which reference had been made. We deem the charge sufficient to have apprised the trial judge that appellant was seeking to have the subject in question embraced in the charge of the court. An examination of the charge discloses that nothing therein gave the jury any light upon the right, if any, of appellant to do anything to prevent any assault by deceased on his wife. This, according to appellant's claim, caused him to do and say the things which caused the assault upon him by deceased. A charge of similar import was requested in the case of Nami v. State, 97 Texas Crim. Rep., 522, 263 S. W., 595. In that case the accused testified that the deceased threatened to kill his (deceased's) wife; that deceased attempted to enter her door and told her if she did not open it he would kill her; that he (the accused), fearing deceased would hurt his wife and son, took hold of deceased and tried to get him not to disturb his wife; that the deceased drew a knife and told the accused that it was none of his business; that as deceased was about to force the door open, he (the accused) followed him; that the deceased then approached him and attacked him with a small bust of Scott; that the deceased then drew a knife and approached him; that they scuffled around the room; that deceased then ran into a dark room; that believing that the deceased was going to get a gun and kill him, he secured a pistol and fired into the room, killing deceased. The court charged on self-defense in Nami's case and in no manner restricted the charge by an instruction on provoking the difficulty. Nami sought an instruction to the effect that he had the legal right to protect or defend the wife of deceased or her child or either of them against an unlawful assault on the part of the deceased, and that if the jury believed that deceased had tried to force an entrance into the room of his wife with the purpose of, unlawfully assaulting her or her child or either of them, and he (Nami) knew of such unlawful purpose or if it reasonably so appeared to him, taking into consideration his knowledge of the character and disposition of the deceased, then he (Nami) had the right to interfere and prevent deceased from entering such room and from making such assault on his wife or child or either of them.

In holding that the charge should have been given, this court, speaking through Judge Lattimore, called attention to the fact that in the absence of some such instruction it was easy to see how the accused's interference with the effort of the deceased to get into his wife's room might have been given harmful effect by the jury. Further, it was said in the opinion that the jury are prone to look with ill-will on acts of other men who meddle in the domestic affairs of others. In the opinion on state's motion for rehearing, after citing numerous cases holding that where there is evidence from which the jury might draw the inference that one charged with homicide or assault acted in the defense of another, the obligation rests upon the trial court, upon the demand of the accused, to give to the jury a charge upon that subject, notwithstanding the accused may testify that he acted in his own self-defense, this court said: "In the present case, according to the theory advanced by the appellant, resting upon his testimony, the initial step taken by him in the difficulty which culminated in the death of the deceased was the appellant's interposition against the execution of the threat by the deceased to kill his wife. This is made plain in the original opinion. The propriety of, and upon demand, the necessity for instructing the jury in appropriate language that the law gave the appellant the right to prevent the deceased from killing his wife, to the writer, seems obvious. Without such an instruction it would have been not unnatural for the jury to have assumed, taking into account the entire situation developed by the record, that in interfering with the deceased when he appeared to be endeavoring to enter the room of his wife, after he had threatened to kill her, the appellant was in the wrong and a meddler in the affairs of another."

We are of the opinion that the facts in the instant case bring it within the holding in Nami's case. According to appellant's testimony, he responded to the request of his wife that he attempt to prevent deceased from killing his (deceased's) wife, and approached deceased with no other purpose in view than to endeavor to prevent him from continuing his assault on his wife. In other words, as in Nami's case, the assault by deceased upon his wife in this case led appellant, according to his version, to say those things which caused deceased to attack him. The attack on appellant, according to appellant's testimony, resulted from this interference.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

MORROW, PRESIDING JUDGE.—It is contended that the controlling legal principles arising from the facts are not identical with those presented in the case of Nami v. State, 97 Texas Crim. Rep., 522, 263 S. W., 595, but are the same as those in the case of Gomez v. State, 116 Texas Crim. Rep., 529, 34 S. W. (2d) 607. The Nami case, supra, in its decision on the facts, is regarded as sound and as controlling the present appeal. In that case and in the present instance, the accused interposed in an effort to prevent the deceased from killing or seriously injuring his wife. The delicacy of the situation resulting from such interference, and the danger of the acts of the accused in endeavoring to stay the assault of the husband upon his wife, and the possibility of misconstruction of the jury of the rights and motives of the accused, are the subject of remarks in some detail in the Nami case, supra, particularly as applied to the facts then under consideration. It is true, as stated in Nami's case, supra: "When there is evidence from which the jury might draw the inference that one charged with homicide or assault acted in the defense of another, the obligation rests upon the trial court, upon demand of the accused, to give to the jury a charge upon that subject, and this principle prevails notwithstanding the appellant may testify that he acted in his own defense."

In the Gomez case, supra, the facts, as interpreted and reflected by the opinion on appeal, were such as impelled the court to conclude that the evidence was not such as rendered it imperative that the court instruct the jury touching the right of Gomez to defend his cousin. It appeared that at the time of the conflict between Gomez and the deceased, the cousin of the appellant was not present but that the previous difficulty between him and the deceased had ended and the cousin had departed from the scene of the difficulty.

The action is overruled.

*Overruled.*