WEBSTER LYONS V. THE STATE.

No. 20667. Delivered February 7, 1940.

The opinion states the case.

*Archie S. Brown, Jr.,* and *John H. Dittmar,* both of San Antonio, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, Judge.

The offense is murder; the punishment, death.

The proof on the part of the State was to the effect that on March 7, 1938, H. W. Seely was robbed by appellant and Robert Manning. In perpetrating the robbery appellant and Manning struck deceased several blows with a piece of iron and inflicted wounds on his head from the effects of which he later died. The State introduced in evidence appellant's confession in which he admitted that he acted with Manning in perpetrating the robbery. However, his statement was to the effect that only Robert Manning struck the deceased. We quote a portion of the statement as follows: "Just before we got in there Robert said he needed some money and don't back out, and I figured then that he was either going to pick Mr. Seely's pockets or use strong-arm methods, and then I went on into the place with him." We quote from the testimony of Robert Manning, who was introduced by the State, as follows:

"On the night of March 7, 1938, somewhere in the neighborhood of nine o'clock we were in Buck's place on East Commerce Street. I met Webster Lyons there and we talked for a while and he told me, 'Come on, let's go around on the street.' Finally I said I could go. He first asked me if I was going to my brother's funeral and I told him I was and he said he would like to go with me but that he had no money and I told him all I could do was to give him the money if he wanted to go. He then said he knew where he could get some money if I would go with him and I said, 'All right. What is it?' We walked around by the railroad express building and there we talked about old man Seely's place and he told me that he had worked for Mr. Seely one time and that he knew he had money. He told me if I would go with him we would have plenty of money and I told him I had never done anything like that and he said, 'You won't have to do anything. Just come and go with me.' I then told him all right. We then went to the railroad tracks and Webster picked up one iron and I picked up one. This piece of iron you show me is one of the pieces we picked up. We left there and went up Center Street to Mesquite Street and turned off and went down one block to

Commerce Street right across the street from Mr. Seely's place about the middle of the block. We went to Mr. Seely's place and I noticed there was a man there talking to him and we stopped and stood there a while and the fellow left the place and went across the street, and we went into the place of business and Mr. Seely was in there by himself. Webster said, 'I am going to tell the old man I am going to buy a coat.' That was before we got into his place of business. We went into the place and Webster tried on the coat, and he tried on several coats, and finally he kept motioning to me to hit Mr. Seely, and I would not hit him, and he came to me and said, 'Robert, why don't you hit the old man?' I told him I was not going to hit Mr. Seely and he told me to go on and hit him.

"Mr. Seely was standing between Webster and me and he turned to look at me and Webster hit him and he fell over on the floor into the clothes racks and Webster turned out the lights and closed the door. Webster told me not to stand there and look but to go and look to see if I could open the desk, and I took an iron bar and went to the desk and the drawer was open and I looked through the drawer and found a pistol and Webster came to me and said, 'Look what I got.' He said, 'I got this off the old man. Have you found anything?' I told him I had not found anything except the pistol and Webster then said, 'We had better get out of here.' I said, 'Wait, let me look through the drawer' and then Lyons went back to Mr. Seely and I heard him hit him, I don't know how many times and I went to Webster and said, 'Don't hit him any more.' I said, 'Come on, let's get out of here' and we went out the door and we went to the same place to the railroad express company building, and Webster turned his pocket inside out and he had some money. We had found some keys and he threw the keys and a small box we had found on top of the building and said, 'That is the way we do that sutff.' He then said, 'We had better hurry up.' We went to Frank's place. Frank is a pawn broker, and there Webster got a brown suit of clothes out of pawn and bought a shirt and necktie, and we then left there and went back to the house and changed clothes. While we were in Frank's place he changed his silver into bills and Webster told Frank he had hit a jackpot, and asked Frank if he would change his silver into bills, and Frank did.

"After we changed our clothes we went down on the street, and went into Buck's place and while in there heard the ambulance go by and Webster winked at me. We went out on the street and Webster asked a man what happened and the man said, 'There is an old man out on the street that two colored

boys had robbed and he is all bloody and crawling on the street.' The ambulance picked him up. I said, 'Well, Webster, we had better go.' I said, 'My aunty said she was going to whip me if she caught me down on the street.' We got a taxi and went to the Missouri Pacific and caught a train and went to San Marcos. We went into the rest room and looked at the pistol and Webster kept the pistol until we got to San Marcos and then gave it to me. The next morning we went to the house of a cousin of mine and he took us to Martindale and we had a flat and stayed there until the flat was fixed, and then went on back to San Marcos and when we got there the funeral had started, and at the funeral service a policeman arrested me.

"I sold the pistol to a man, whose name I do not know, but my brother was working for him in a filling station. We divided the money we got for the pistol and went to Martindale."

There were many corroborating circumstances introduced by the State.

Appellant excepted to the charge of the court on the ground that it failed to require the jury to find a specific intent to kill. A further exception was based upon the ground that the court failed to charge upon aggravated assault. These exceptions appear to have been properly overruled. In Miller v. State, 13 S. W. (2d) 865, we held that under our present murder statute, which was passed by the Fortieth Legislature (General and Special Acts, 1927, Chapter 274), the court is ordinarily required, when the charge is demanded, to instruct the jury that they must find that the accused intended to kill the deceased. In the course of the opinion Judge Martin, speaking for the court, used language as follows: "There do exist cases, we think, in which it is not necessary to prove a specific intent to kill any further than is involved in the proof of certain facts, as the intentional infliction of seriouos bodily injury upon the person of another by the use of a weapon deadly per se, or a killing committed in the attempted perpetration of arson, burglary, etc. In such cases we can see no reason for giving the charge under discussion."

Appellant's amended motion for new trial was overruled on the 26th day of April, 1939, at which time he gave notice of appeal. The court granted appellant ninety days from the date mentioned in which to file his bills of exception. We find in a supplemental transcript eight bills of exception. They were filed too late to warrant their consideration. The first six bills were filed August 24, 1939. The last two were filed Sep-

tember 5, 1939. Thus it is seen that the majority of the bills were filed 120 days after notice of appeal was given and that the others were filed 132 days after such date. We have examined these bills of exception and if we were authorized to consider them we would be constrained to hold that they fail to reflect reversible error.

The judgment is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.