EMMETT SMITH V. THE STATE.

No. 22616. Delivered November 10, 1943.
Rehearing Denied May 17, 1944.

GRAVES, Judge, dissenting on motion for rehearing.

The opinion states the case.

*E. T. Miller*, of Amarillo, for appellant.

*Spurgeon E. Bell*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the State penitentiary for a period of three years and six months.

Appellant's chief contention is that the trial court erred in overruling his motion in which he requested the court to peremptorily instruct the jury to acquit him. He bases his contention upon two grounds. First, that injuries which the deceased received were not inflicted upon a highway, but after the automobile had passed from the highway through a barbed-wire fence and into a pasture. Second, that the uncontradicted evidence shows that he had no knowledge that the deceased was on the turtle-back or the left rear fender of the automobile at the time of the unfortunate occurrence and therefore could not be guilty of murder under Art. 802c, P. C.

In order that this opinion may clearly reflect the basis for our conclusion on the question presented, we deem it proper to briefly state the salient facts proven on the trial.

The record shows that on or about the 14th day of May, 1942, the appellant and his wife, accompanied by a brother-in-

law, O. G. McCormack, and his wife, came in an automobile from Dimmitt, by way of Amarillo, to Wheeler to visit the parents of O. G. McCormack and appellant's wife; that before leaving Amarillo appellant purchased a quart of whisky; that on the way to Wheeler he and his brother-in-law, O. G.. McCormack, took two or three drinks; that after they arrived at their destination they each took another drink before eating their evening meal; that after they had finished their meal the appellant, accompanied by his father-in-law and brother-in-law, went to the home of Venson Smith, a nephew of appellant; that while at Smith's home, he and appellant took a drink or two of whisky out of the latter's bottle. While at the home of Smith, appellant and the McCormacks invited Smith and his wife to go back with them to the McCormack home and visit with them a while, which Smith and his wife agreed to do. They left the home of Smith about dark in two automobiles, the appellant and the McCormacks riding in a car driven by appellant while Smith and his wife rode in their own car. After they had reached the main highway, appellant drove off the main traveled part of the highway and bogged down in a sand bed. Venson Smith, who endeavored to pull them out, slipped down and also bogged down. While they were trying to dig the cars out with their hands, the deceased, Tyson Jeffus, and wife drove up in a coupe. Smith solicited Jeffus to help get the cars out of the sand bed. After they had worked awhile without any success, Smith and Jeffus, accompanied by their wives, drove in Jeffus' car to a neighbor's house, borrowed a shovel, came back and started shoveling sand while their wives remained in Jeffus' coupe. While the men were thus engaged, appellant left his car, went to the coupe occupied by Mrs. Smith and Mrs. Jeffus, got into the car under the steering wheel and started to drive away. The women screamed and tried to prevent him from driving the automobile away. Mrs. Smith, who was seated on the right-hand side of the coupe, leaped from it. Their husbands, who heard the screams and also saw the car moving, ran towards it, with a view of recovering it. Jeffus jumped on the turtle-back thereof and made his way to the left rear fender while the car was being driven by appellant at a high rate of speed. While Jeffus occupied the position stated, appellant drove across the highway, down the embankment, across the borrow pit and through a barbed-wire fence which stood about two or three feet east of the highway and parallel thereto, breaking posts and wires; that some of the broken wires wrapped around the car and swung back, severing the femoral artery in Jeffus' leg, as a result of which he bled to death in a very few minutes. Neither appellant nor Mrs. Jeffus, who occupied the car at the

time of the unfortunate occurrence, knew that the deceased was on the fender of the automobile.

Appellant takes the position that the facts of this case do not bring him within the purview of Articles 802, 802b, and 803c, P. C., which read as follows:

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, shall be guilty of a misdemeanor, and upon conviction, shall be punished by confinement in the County Jail for not less than ten (10) days nor more than two (2) years, or by a fine of not less than Fifty Dollars ($50) nor more than Five Hundred Dollars ($500), or by both such fine and imprisonment." (Art. 802).

"Any person who has been convicted of the misdemeanor offense of driving or operating an automobile or other motor vehicle upon any public road or highway in this State or upon any street or alley within an incorporated city, town or village, while intoxicated or under the influence of intoxicating liquor, and who shall thereafter drive or operate an automobile or other motor vehicle upon any public road or highway in this State or upon any street or alley within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, shall be guilty of a felony and upon conviction be punished by confinement in the penitentiary for any term of years not less than one (1) nor more than five (5)." (Art. 802b).

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, and while so driving and operating such automobile or other motor vehicle shall through accident or mistake do another act which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed." (Art. 802c).

Appellant claims that since the fence was two or three feet removed from the east boundary line of the highway and the body of the deceased was found in a pasture thirty or forty feet

east of the highway, the offense charged was not committed upon a highway and, since under the statute the act must have been committed on a highway, street or alley of a city, town or village, he was entitled to the requested instruction. We do not believe his position is well founded. It must be borne in mind that he set the automobile in motion while on the highway and remained on the highway until after he ran through the fence into the pasture; that the broken wires swung back and inflicted the injuries which resulted in the death of Jeffus; that he was still on the highway when he encountered the fence. Had he not struck the fence and broken the wires, the particular injury would not have resulted to the deceased. Therefore, the question arises: Was the injury inflicted while the automobile was still on the highway or after it had passed through the fence and into the pasture? It is common knowledge that wire is more or less elastic and when stretched to the breaking point swings back beyond the point of its original position. This being true, it occurs to us that whether or not appellant was on or off the highway was an issue of fact which the jury was authorized to determine from all the facts and circumstances before them. Consequently, appellant was not entitled to the instruction requested upon the point just considered.

Having disposed of his first contention, we will now discuss his next question. The driving of an automobile upon a public highway by a person while intoxicated is a misdemeanor under Art. 802, P.C., but becomes a felony under Art. 802b, P.C., when such person has theretofore been convicted of such offense. Consequently, in the absence of being charged with having theretofore been convicted of driving an automobile upon a public highway while intoxicated, he would not be guilty of a felony. Therefore, to bring the act of the appellant in the present case within the purview of Art. 802, P. C., his act of intentionally driving an automobile, while intoxicated, through a barbed-wire fence must constitute a felony under the law. If it does not, he cannot be convicted of murder under the disputed facts of this case. Therefore, unless he knew that the deceased was on the fender of the car and did, with a reckless disregard of the lives of others, drive the car through the fence, knowing that death would be the natural and probable consequences of his act, he would not be guilty of murder. Suppose appellant had been sober and had deliberately driven the car through a barbed-wire fence without any knowledge on his part that the deceased was on the rear fender of the car and without any intent to injure or kill and without any apparent danger of doing so, would he be guilty of murder? We think not. While

it is true that every person is responsible for the natural and probable consequences of his act, yet, unless the result of his act is the natural and probable consequences thereof, he would not be guilty of an offense. Therefore, unless appellant knew that the deceased was on the rear fender of the car or had any reason to believe that he or some other person was in it, there could not have been an apparent danger of killing anyone.

In the case of Latta v. State, 64 S. W. (2d) 968, the appellant was charged with the murder of his wife. The facts developed upon the trial of that case showed that the deceased was in a vacant room of which the door was closed. The accused, who was in the hallway with a grapefruit in one hand and a pistol in the other, claimed that the pistol was accidently discharged, the bullet passing through the door and killing his wife instantly. We held in that case that the accused was entitled to an affirmative instruction on the lack of knowledge on his part that the deceased was in the vacant room. The effect of such a charge would be that if the accused had no knowledge that a person was in the room and would likely be struck by the bullet so fired, he would not be guilty of murder.

In the case of Cockrell v. State, 117 S. W. (2d) 1105, the facts disclosed that a man, his wife and several children were walking along the side of a public highway, going in the direction from which the appellant was coming in an automibile; that appellant, while intoxicated, drove the car against and over the children, killing two of them. In that case we said that the act of the accused in driving his automobile showed such a reckless disregard of the lives of others as to warrant a conviction of murder with malice. In that case the accused saw the people on the side of the road, or, by the exercise of his normal faculties, could have seen them. He may not have intended to kill anyone, yet, his act was such that it showed a reckless disregard for human life. Had the appellant in the present case known that the deceased was on the rear fender of the car and with full knowledge thereof he had deliberately driven through the barbed-wire fence, an entirely different question would be presented. Had appellant, while under the influence of intoxicating liquor, driven the car upon said highway and, by accident or mistake, struck the deceased, whether he saw him or not but where he should have expected people to be, he would no doubt be guilty under Art. 802c, P.C.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion, of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The questions presented by the State in its motion for rehearing are very difficult ones and have been given exhaustive consideration by the members of the court. This opinion will not deal with each and every phase of the questions that have been raised because we think a reversal is required by reason of the matter discussed. The original opinion correctly disposed of the appeal and we now concur in the reversal of it.

Among the very earnest contentions made, the State says that the original opinion was in error in its conclusion of the fact that the deceased was on the turtle-back of his car at the time appellant drove through the fence, breaking a barbed wire which caught the leg of deceased, severed an artery and immediately produced his death. Instead, the motion says that the deceased had crawled over the back of the car and onto the running board of the left-hand side which would be immediately by the side of appellant as he and a lady occupant struggled for control of the steering wheel. In this position it is thought that appellant must have known of the presence of deceased. We have doubts about the sufficiency of the evidence on this point and such doubt should be resolved in favor of the accused. Reliance is had upon the evidence of Venson Smith who was the first witness called by the State. We quote from his testimony on cross examination as follows:

"As to whether I said, from what I could see there in the dark, the deceased went up on the back of the car and over onto the left-hand side—well, I couldn't see, but that is the only way I could figure he did. I couldn't see because it was dark, and, the best I remember, the sand was kind of flying. My judgment was that he got over the car onto the side of the car—the left-hand side, slightly angling from the east."

This evidence is too indefinite and uncertain to place the deceased in a position where it might be presumed that appellant knew of his presence or that he was charged with knowing it. There is a lack of positiveness about the evidence, unaided as it is by any circumstances, and the jury would not be warranted

in finding as a fact that deceased was on the running board in view of appellant or so nearly so that appellant should have seen him. Furthermore, the wife of deceased was in the car struggling with appellant for control of the steering wheel. She was by his side and apparently in as good position to see deceased as was the appellant. She did not see him. This is only a circumstance but a contradictory one.

We are not discussing the other questions because that is not necessary to a final conclusion of the case, nor do we attempt to restate all of the reasons set forth in the original opinion on a particular question calling for the reversal of the case.

The State's motion for rehearing is overruled.

GRAVES, Judge (dissenting).

My Brethren are firm in the belief that this cause should be reversed and remanded.

The original opinion herein states the following:

"Appellant's chief contention is that the trial court erred in overruling his motion in which he requested the court to peremptorily instruct the jury to acquit him. He bases his contention upon two grounds. First, that injuries which the deceased received were not inflicted upon a highway, but after the automobile had passed from the highway through a barbed-wire fence and into a pasture. Second that the uncontradicted evidence shows that he had no knowledge that the deceased was on the turtleback or the left rear fender of the automobile at the time of the unfortunate occurrence and therefore could not be guilty of murder under Art. 802c, P. C. * *,*

"The driving of an automobile upon a public highway by a person while intoxicated is a misdemeanor under Art. 802, P.C., but becomes a felony under Art. 802b, P.C., when such person has theretofore been convicted of such offense. Consequently, in the absence of being charged with having theretofore been convicted of driving an automobile upon a public highway while intoxicated, he would not be guilty of a felony. Therefore, to bring the act of the appellant in the present case within the purview of Art. 802c, P.C., his act of intentionally driving an automobile, while intoxicated, through a barbed-wire fence must constitute a felony under the law."

I think the opinion has mixed and intermingled the three statutes quoted therein, and is trying to operate under all three of them at the same time.

With this conclusion I do not agree. I think the instant statute stands alone and itself refutes the above quotation from the original opinion. Art. 802c, P.C. reads as follows:

"Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley or any other place within the limits of an incorporate city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, and while so driving or operating such automobile or other vehicle shall through accident or mistake do another act, which if voluntarily done would be a felony, shall receive the punishment affixed to the felony actually committed."

I do not think that it was necessary to have shown herein that this was the second or subsequent act of driving while intoxicated upon the part of appellant before he could be convicted under Art. 802c, P.C. Nowhere therein is it said that upon a subsequent conviction Art. 802c, P.C., shall only apply, nor is there aught said about while in the commission of a felony by the accused.

The intent to kill is not here presented by either the charge itself or the statute. The statute absolutely precludes the intent to kill by saying that such drunken driving should be punished the same as if voluntarily done, meaning voluntarily or intentionally done. "Voluntarily" as here used means intentionally or by design, and a voluntary killing is simply an intentional killing. 22 Tex. Jur., p. 550; Miller v. State, 112 Texas Cr. R. 125, 13 S. W. (2d) 865; Thompson v. State, 24 Tex. App. 383, 6 S. W. 296; Crutchfield v. State, 110 Texas Cr. R. 420, 10 S. W. (2d) 119.

If the act was done by accident or mistake as herein charged, same could not have been done voluntarily or intentionally. If such was done voluntarily, then same would have been intentionally done, and appellant be punished as is affixed for murder, but if by accident or mistake a felonious act is done by a drunken driver, then the question of intent is lost in the fact of accident, the question of intent only arising as to the fact of driving while intoxicated. Appellant is not charged with murder; he doubtless would have been if he had possessed at the time an intent to kill, but his intent is unnecessary as to the kill-

ing if by his drunken driving he kills another by accident; he has committed an offense; he cannot defend on a lack of intent to commit the crime actually committed, and his punishment is arrived at by consulting the statute that would have denounced the offense, provided same was voluntarily or intentionally done. Art. 802c, P.C., takes away from an accused a right given him of the defense of accident or mistake because of the fact of drunkenness being present. The case of Latta v. State, supra, quoted in the original opinion, is not in point. In that case Latta was not drunk nor charged with drunken driving. His claim was that while his wife was in a vacant room next to their living room, the accused appeared at the door leading into such room with a pistol in one hand a grape fruit in the other, and while attempting to close the door, not knowing his wife was in such vacant room, the pistol went off accidentally and killed the wife. Of course the accused had the right to have the jury instructed relative to an accidental killing, and the case was reversed, among other reasons, on account of an error in such charge. There was no effort of any kind made to bring the Latta case under Art. 802c, P. C.

The opinion again states:

"Had the appellant in the present case known that the deceased was on the rear fender of the car and with full knowledge thereof he had deliberately driven through the barbed-wire fence, an entirely different question would be presented. Had appellant, while under the influence of intoxicating liquor, driven the car upon said highway, and, by accident or mistake, struck the deceased, whether he saw him or not but where he should have expected people to be, he would no doubt be guilty under Art. 802c, P.C."

The first portion of such above quoted statement would have made out a perfect case of murder, not a killing by accident or mistake while drunk driving. The last portion of such quotation is borne out by the evidence. There were present at the time of Mr. Jeffus' death on such highway, evidently close together, eight persons, and at least four automobiles, two in the ditch, and an automobile and a truck on the highway. Mr. Jeffus' car engine was running, with two women in it, the lights shining on the two cars stuck in the pit; appellant jumped in the Jeffus' car, one of the women jumping out, and the other trying to stop him and trying to cut off the engine, and he started the car and ran it toward three men down in the ditch who were trying to extricate the cars stuck down there; he then turned and ran the car across the highway, Mr. Jeffus and Venson Smith fol-

lowing him, and Mr. Jeffus catching the car and getting on the left-hand running board of the Ford Coupe; whereupon appellant ran into the fence and Mr. Jeffus there met his death.

Appellant's defense was that he had previously the same night, and at practically the same place, attempted to stop a truck on the highway, and such truck had struck him, knocked him down, and so badly injured him that he lost consciousness and remembered nothing of the events that took place that night, and did not recover consciousness until the next morning. He claimed to know nothing about the taking of the Jeffus' car, nor about Mr. Jeffus' death. This defense was submitted by the court and no complaint made thereon. In fact no mention is ever made in any objections or exceptions of any lack of intent, the burden of all such objections being that the killing of Mr. Jeffus took place off the highway, and therefore that appellant did not kill him while drunk driving on a public road or highway, but killed him in a pasture, beyond the highway fence.

The second complaint mentioned in the opinion, that is lack of knowledge upon appellant's part of Mr. Jeffus' position on the car, is only voiced in appellant's brief and not in the record. Guilty knowledge is no part of the denounced offense; nowhere therein is appellant accused of knowingly committing the act charged. If such were true, then in the killing of a person upon the highway in a collision with another car it would have to be shown that the accused knew that such person was present in said car thus collided with, although there might have also been many others present therein. Not only that, but one who recklessly, while intoxicated, drove down a highway in the dark could defend upon the ground that, although drunk, he did not see the person he thus recklessly killed; having eyes to see, he saw not.

Again, appellant says that by reason of his being struck by a truck, prior to Mr. Jeffus' death, he knew absolutely nothing about what happened at such death, the State countering, however, with the theory that the reason of appellant's lapse of memory being his drunken condition; and yet the opinion herein requiring the State to show that appellant knew of the presence of the deceased upon the left fender of the coupe before a conviction for this killing by accident or mistake can be upheld.

The facts do not show that the deceased was on the rear fender of the car as is mentioned in that last portion of the opinion

herein; the facts do show that the deceased was on the left-hand running board of the car, the last time he was seen before he was struck; he was surely within close proximity to this appellant, as he drove through the fence, and the class of supposed circumstances as presented in the latter portion of such opinion would not have constituted guilt under Art. 802c, P.C., but would have been murder; this statute is not a murder statute,— it is a drunk driving statute. This appellant is not charged with being a murderer; he is charged as a drunk driver with killing a man by accident. The gist of the offense is not the knowledge of Mr. Jeffus' position of danger on the car and his killing by running into the fence; that would have been murder; the burden of this offense is the unlawful driving of a drunken person on a highway and accidently killing a person, an entirely different offense from murder, and associated therein only in the amount of punishment.

The case of Cockell v. State, 117 S. W. (2d) 1105, is strongly in point and should certainly be persuasive herein. Appellant was undoubtedly drunk, and driving an automobile while drunk; he unlawfully possessed himself of the deceased's car over the vigorous objections of Mrs. Jeffus; he again drove that car and by accident killed Mr. Jeffus with Jeffus' own car while trying to escape.

I think this cause should be affirmed, and I therefore respectfully dissent from the opinion reversing the same.