# BOB WALL V. STATE.

No. 25211.  April 25, 1951.
Rehearing Denied June 20, 1951.
Second Motion for Rehearing Denied.
(Without Written Opinion) June 30, 1951,

Hon. D. W. Bartlett, Judge Presiding.

*Jack Corman*, Dallas, *McKinney and McKinney*, Cooper, for appellant.

*Gene Maddin*, District Attorney, Waco, and *George P. Blackburn*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted and assessed the death penalty for the murder of Jacob Coleman.

The deceased occupied a room on the third floor of the Marlowe Apartments in Waco, and was employed as a guard at the Crawford-Austin Company.

When he failed to show up for work on the early morning of August 27, 1950, a fellow employee went to the deceased's room to investigate and found his dead body lying on the floor "bound and gagged, tied hand and foot, with an undershirt tied under his neck."

Dr. W. W. Klatt, who viewed the body in the room and later performed an autopsy, described the scene in the room as follows:

"You have asked me to tell the jury the appearance and condition of the body when I first got there. The body was that of a white man of approximately 65 years of age. He was dead. He was lying face down, rather more on his right side than on his left. He was facing towards the left. His hands and feet had been tied behind him with strips of white cloth. There was a piece of cloth resembling a handkerchief in his mouth and a piece of cloth resembling an undershirt had been twisted and tied into his mouth and behind the neck. Abrasions on the right side of his face and on the right eye, which were apparently— recent origin and bloody."

Based upon his examination and autopsy, the doctor expressed the opinion that the deceased died from suffocation or smothering caused by the gag placed in his mouth. It was his opinion that though the deceased was "pretty well beaten up," that the wounds on his face were not sufficient to cause death. It was further suggested by this witness that the tying of deceased's hands and feet had no bearing on his death except for the fact that otherwise, if not unconscious from the blows, he might have removed the gag which suffocated him.

Though August 26 was his payday, a search of the body of the deceased revealed that his pockets were empty, the front pockets being turned wrong side out. Nothing of value was found upon the body or elsewhere in the room.

Prince Ferguson, a man 76 years of age, who also occupied a room on the third floor of the Marlowe Apartments, testified that he last saw the deceased about midnight, at which time he was going to his room, having arranged for the witness to wake him up at 3 A. M.

Ferguson testified that he saw two men pass his door going toward the deceased's room some 3 minutes after deceased left. He identified appellant as one of the men, the other being a man somewhat shorter than appellant. He heard the screen door of appellant's room open after the two men passed, and thereafter heard "a little moving around" in the room, and heard some low talking which he could not understand. Some 25 minutes later he heard the men leave, but did not see them.

He called to the deceased at 3 A.M. and, when he received no reply, looked into the room and seeing the bed empty left without further investigation, assuming that the deceased had gone to work.

Appellant and one J. D. Craft occupied Room 316 at the Berkman Hotel, Craft having occupied the room for a day or so prior to appellant's arrival on August 26, 1950. Appellant registered as an additional occupant signing the fictitious name of Dawson. Craft paid the additional charge for appellant's joint use of the room for two days.

A maid at the Berkman Hotel testified that at about 2:30 or 3 o'clock in the early morning of Sunday, August 27, 1950, appellant and Craft came into the hotel together and she gave them the key to Room 316.

There was found in Room 316 a pair of brown trousers with Craft's laundry mark, and a pair of green trousers with appellant's name stamped on the inside. Blood was found on the brown trousers and on a handkerchief in the pocket.

A hotel towel was found on a shelf which had blood on it.

A number of papers belonging to the deceased were found under a rug in the room, including a photostatic copy of his

birth certificate, certificates of enrollment and of meritorious conduct issued to the deceased by the Auxiliary Military Police, Army of the United States, and nine government bonds.

The clothing was examined by a chemist for the Texas Department of Public Safety, who also examined the gag taken from the mouth of the deceased. The trousers belonging to Craft, the hotel towel, the handkerchief found in the pocket of the brown trousers, and the gag were found to have blood of Type "A" on them.

Blood was also found on the right leg of appellant's green trousers and on the left sleeve of the shirt he was wearing when arrested, but the amount was not sufficient for the type to be determined.

Appellant and Craft were seen together prior to the time the deceased came to his room, and were together when arrested on Sunday night, August 27th, on the streets of Waco.

Appellant testified denying that he had any part in the robbery or killing of the deceased or that he was acquainted with the deceased or had at any time been in the Marlowe Apartments.

The case was submitted to the jury upon circumstantial evidence. We overrule appellant's contention that the evidence is insufficient to support the jury's verdict.

The indictment charged the killing of deceased "by beating him on the head with his fists, by smothering him by tying a gag in his mouth, and by tying his hands and feet and leaving him bound and gagged." Bill of Exception No. 1 complains of the overruling of his motion to quash the indictment on the ground that it was indefinite and uncertain and did not apprise appellant of the charge against him. We see no error in the refusal of the trial judge to quash the indictment. It appears to charge the killing in the manner thereafter shown by the proof.

Appellant complains of the charge of the court in failing to require a finding of a specific intent to kill. The jury was instructed on the law of principals, and was charged to the effect that if appellant and James Craft entered into a common plan or design to rob the deceased and that in the execution of such plan the deceased was killed by either Craft or appellant as a natural and probable consequence of such common design which

consequence might have and should have been foreseen by appellant that appellant would be guilty of murder.

Under the facts, appellant's guilt as a principal may have been predicated upon such common design of robbery, and a charge on specific intent to kill was not called for. See Lyons v. State, 138 Tex. Cr. R. 375, 136 S.W. 2d 835; Miller v. State, 112 Tex. Cr. R. 125, 13 S.W. 2d 865.

Bill of Exceptions No. 4 complains that while appellant's counsel was addressing the jury, and after such counsel had argued to the jury that under the law the defendant could not call James Craft to the stand but the state had a right to do so, the district attorney interrupted the argument and stated before the jury that the state would waive objection to the defendant placing Craft on the stand as a witness, and appellant excepted to the overruling of his motion to have the jury instructed to disregard the remarks and offer of the district attorney.

Bill of Exception No. 5 complains of a similar remark and offer of the district attorney made in his closing argument.

Each of these bills were qualified by the trial court with the statement that the remarks of the district attorney were invited and provoked by appellant's counsel, and that there was no evidence showing that Craft was under indictment for an offense growing out of the robbery or murder or that he was incompetent as a witness for either the state or the defendant. As so qualified, the bills show no reversible error.

Bill of Exceptions No. 19 complains that on cross-examination of appellant he was asked by the state "Isn't it a fact when you met Craft you reminded him that you had met him in a jail at Greenville?"

The objection shown by the bill was that it was "immaterial and no predicate laid."

The qualification to the bill shows that the question was answered in the negative, and was considered admissible for impeachment purposes, appellant having testified previously that he had never seen or met Craft before he came to Waco.

We see no error in this bill as qualified.

Bill of Exceptions No. 21 complains of the asking of appellant on cross-examination, "How many times have you been in the penitentiary?" and "When was the last time you were in the penitentiary?" The court qualified this bill so as to show that he sustained each and every objection made to the questions set out in the bill, and that no exception was reserved. The bill, as qualified, shows no error.

Appellant having failed to except thereto is bound by the qualifications to his bill and cannot now be heard to question the correctness of the explanation contained therein.

Other bills of exception and exceptions to the court's charge have been examined and we find no error in the record requiring reversal.

The evidence being sufficient to sustain the verdict, the judgment is affirmed.

Opinion approved by the court.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

A very insistent motion has been filed for a rehearing in this cause. We are unable to agree, however, with its logic and do not feel called upon to discuss it in its entirety.

One of the several complaints in the motion, and the argument presented in its behalf, is directed to Bill of Exceptions No. 4. While one of the attorneys was arguing the defense he made the statement, as disclosed by the bill, that the state had not presented Craft as a witness and that the defendant was not permitted to do so under the law. The first part of this statement was apparent to the jury, but the second part brought before them a matter not in evidence. We have examined it carefully and, as stated by the qualification of this bill, it had not been shown in evidence that Craft was charged with any offense. The evidence does show grounds for such charge, but so far as we can tell from the record he had not been indicted nor had a charge been filed against him. The argument of the defense brought this new fact before the jury.

The attorney for a defendant has much greater liberty in his argument than does the attorney for the state. If the state

gets out of the record he may at once commit reversible error. An objection is generally filed to that kind of argument and the matter brought up to this court as a ground for reversal. On the other hand, the state stands helpless if the court permits an improper argument by the defense attorney. The only right that the state has, in such cases, is to follow the defense attorney out of the record and answer the argument. He cannot protect the state's interest on appeal as the defendant may. When he follows the defense attorney out of the record the prosecutor can only go into such matter as is invited. The bill shows what took place in this case, independent of the court's qualification. Our original opinion referred to the qualification but that was unnecessary. We could have said that the bill itself showed justification for the remarks which the district attorney made in reply to the defense. It is very clear that the state's attorney had the right to offer the defense the evidence which he complained of not having. The court had the power to reopen the evidence and permit its introduction. We see no reason why the state should not have made the offer. If the defendant did not want it he should not have complained about it.

It then appears, without further discussion, that the district attorney had the right in his closing argument to make the statement complained of in Bill of Exceptions No. 5 as in reply to that of defense attorney.

Considerable stress is laid, in oral argument, on the failure of the court to grant a new trial on the grounds set out in Bill of Exception No. 19 Appellant had denied any connection with the murder and said that he had never known Craft before he came to Waco. As impeaching evidence the state sought to elicit from him an admission that this statement was incorrect and asked the question: "Isn't it a fact when you met Craft you reminded him that you had met him in a jail at Greenville?"

The question might be unfair as an insinuation but we find nothing in the record to support a claim of unfairness. That the state had information on the subject is not challenged. This bill falls under its own weight. As we understand defendant's evidence his denial that he had ever known Craft before coming to Waco was to bolster his own statement that he had nothing to do with the murder and robbery. The statement seems to be of importance to him and it became material that the state have the privilege of rebutting it.

We have in this case, as always, reviewed the record with care and caution in order that nothing may be overlooked which is material to the claims of one accused of crime—whether it be a matter that deprives him of his liberty or his life. We find no issue that was not properly placed before the jury. The facts, if believed by the jury, sustain their verdict. The careful trial court performed his duty in the matter in a most commendable way. If mistakes were made the jury made them and neither the trial court nor this court has any right or power under the law to set aside their verdict under the facts of this case.

The motion for rehearing is overruled.