Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirty-two years.
Bill number 2 shows that the State proved by Bessie Johnson that defendant, Henry Washington, did not pay the funeral expenses of the deceased, his wife, May Washington. Defendant objected on the ground that it was immaterial, irrelevant and inadmissible, and tended to prejudice the minds of the jury against defendant. The court appends this explanation to the bill: "That the defense was an accidental killing. To refute this, and as a circumstance to show malice, the State was allowed to prove that defendant did not provide for the burial of his wife. But the defendant was permitted to show that he offered to *Page 187 
do so, and was prevented, which was not disputed." With the explanation of the court we think the error was harmless.
Bill number 3 complains of the court permitting State's witness Bessie Johnson to testify that May Washington (deceased) started to quit defendant and he would not let her go, and said before he would let her go he would kill her. The record shows that appellant killed his wife, the deceased. Appellant objected to this testimony because the same is not res gestae, was not a part of the transaction, and in no way connected therewith. This testimony was admissible in order to show the animus of appellant towards deceased. While the witness Bessie Johnson was on the stand for the State, the court asked her the following question: "Do you know what forestall means?" Witness answered, "No, sir; I do not." Appellant objected to the conduct of the court in thus interrogating said witness, and helping the witness out of the difficulty of her testimony, because it was calculated to lead the jury to believe that the court believed said statement of the witness Bessie Johnson; and the court had no right to interfere with the cross-examination as long as appellant did not go further than the law warranted in his right of cross-examination. We see nothing in this bill showing that the court violated the usual rules of impartiality required of it; but the bill merely evidences an effort on the part of the court to have the witness understand certain testimony.
And while the witness Bessie Johnson was testifying, on cross-examination, the court excused the witness and directed her to stand aside, against the protest of defendant; and after defendant had stated to the court that he was not through with the cross-examination of said witness. This bill is signed by the court with this explanation: "The witness had been cross-examined by counsel for more than three hours, and the examination at the time she was sent from the stand was on matters upon which she had been fully examined." In this there was no error.
Bill number 6 complains that the State asked Dr. McCracken, "From what you saw of the wounds of deceased at the time, and from expressions you heard from her at the time, taken in connection with what you heard in her presence, I now ask you whether she did understand that death was impending?" And also the further question, "State whether she gave any expression with reference to dying or impending death, or whether she had any hope of recovery?" Appellant objected because the testimony sought to be disclosed did not come within the scope of expert testimony, and was inadmissible. The court overruled the objection, and the witness answered, "She had none, I think." As disclosed by this bill there is nothing to indicate any prejudicial testimony. The bill does not show that deceased made a dying declaration, according to this bill; but merely evidences the opinion of the physician that she though she was dying. *Page 188 
Bill number 7 complains that the court asked Dr. McCracken the following: "You have stated that she had no hope of recovery, but you state no facts in reference to the statements she made upon which you base that reference to her dying." To which defendant objected, and the witness answered, "I said as soon as I examined the wounds that there was no show for her at all." Defendant objected, because the same was not responsive to the question, was inadmissible; that the same does not tend to prove the condition of deceased at the time, nor establish the fact that she was in condition to make such statement as a dying declaration as would be admissible. This bill is defective, as the one just discussed. It does not show any testimony given by the physician prejudicial to the right of defendant, or that deceased made any statement at all.
Bill number 8 complains that the court permitted the witness Dr. McCracken to testify that deceased, some two hours after the shooting, and after many other people had been there, stated that defendant Henry Washington shot her. Appellant objected to this because there was no proof in the record showing that said statement was in the nature of a dying declaration; and that it had not been proven by any witness that deceased, May Washington, at the time she made such statement believed she was going to die, and had no hope of recovery. This bill is approved with the statement by the court, "that the court thinks a proper predicate for the dying declaration was laid, and further, defendant took the stand and testified that he shot deceased."
Bill number 9 complains that the court permitted the State to ask defendant the following questions: "Where did you get that pistol that night? Answer: I brought it from my work. Q. On which one of these trips? A. On the first one. Q. You were going through the streets of Mineral Wells with a pistol?" To which question defendant objected on the ground that the same was immaterial and irrelevant, and tended only to prejudice the minds of the jury against defendant by showing them that he was or had been guilty of another crime than that charged, to wit, the unlawful carrying of a pistol, and did not in any way tend to establish the guilt of defendant of the murder charged. The court explains the bill by saying, "this was the pistol with which defendant said he shot deceased."
Bill number 10 complains of the following: Defendant's counsel asked defendant on redirect examination, the following: "You speak of that man going out at the other door. A. I could see him as he went out. Q. You could see him as he went out? A. Yes, sir; I was close to the other door, and the back door was at the other side of the wall, and I went back out the other way. Q. Was there any opening besides the middle door? A. There was another door right on the north side as you looked out of the house, and I saw him when he went out this middle door. All I had to do was to step a little this way and I *Page 189 
could see the back door. The court thereupon asked witness (defendant) `Why didn't you kill that fellow when he went through there?' And defendant answered, `I don't know why I didn't.'" To which question by the court defendant objected. This bill is defective in that it does not state the objection; nor show how or in what way the conduct of the court injured appellant. We can only treat the point and objection made by appellant in the bill. Here we have the bare statement that defendant objected. However, in passing we say that the court should observe the utmost impartiality during the trial of an accused. We would not be understood as saying it is not proper that the court should insist that defendant's testimony be understood by the jury; but this is the extent to which decorum permits the court to go.
Bill of exceptions number 11 shows that defendant placed F.C. Cook, a preacher, on the stand, and asked him the following question: "I will ask you, if she [meaning deceased] was not dismissed from your church?" The State objected because immaterial and not rebuttal testimony, and the court sustained the objections. Defendant excepted, stating to the court that said testimony sought to be elicited was material to defendant, inasmuch as the court had permitted the State to prove that deceased was a religious woman. The court appends this qualification to the bill: "State's witness Bessie Johnson testified that immediately before the killing deceased was praying. This is all the proof the court remembers admitting on the point." What the witness would have answered is not contained in this bill, and even conceding its admissibility we can not say whether it is injurious to appellant or not. However, we do not think, in view of the explanation of the court, it would have been admissible, no matter what the answer to the question may have been.
Bill of exceptions number 12 complains that the State was permitted to prove by Emma Williams that deceased, May Washington, at the time of the killing was pregnant. Appellant objected on the ground that it was not material, tended to prejudice defendant, was not in rebuttal to anything to which defendant had testified; and was not in contradiction of anything that had been proved, and was calculated to prejudice the minds of the jury, and show defendant not only killed his wife, but that he killed his offspring. The court overrruled appellant's objection, and attaches the following explanation to the bill: "Defendant had testified that he came home in the night and discovered a negro man in bed with his wife; that he immediately began shooting at said negro and accidentally killed his wife. In rebuttal the State was permitted to prove by the witness that deceased was then more than seven months advanced in pregnancy. The court felt this a competent circumstance to be considered by the jury along with all the other evidence, in determining whether a man was in fact in deceased's room. It is not conclusive, of course." Any testimony tending to strengthen *Page 190 
the theory of the State or the defendant, coming within the rules of law, is proper evidence to go to the jury. Its weight is for the jury to consider. The pregnancy of deceased is a circumstance, strong or remote, going to prove the improbability that deceased was engaged in a liaison with the negro man, and to that extent would demonstrate or refute appellant's defense. It follows, therefore, that the court did not err in admitting this testimony.
No error appearing in the record, the judgment is affirmed.
Affirmed.
 ON REHEARING. March 23, 1904.