JACK FOWLER v. THE STATE.

No. 12985. Delivered April 22, 1931.

420

The opinion states the case.

*J. Mitch Johnson,* of San Saba, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment being five years in the penitentiary.

In a rural community in San Saba county there lived with their families F. L. Crawford and Jim Isham. Their places were about a mile apart with a neighborhood road running from one to the other. Appellant lived on this road in a small house consisting of one room, with a lean-to kitchen at the back and a small brush arbor in front. On the night of the tragedy out of which this prosecution grew a party was given at Jim Isham's house. Armand Crawford, a boy about eighteen years old, and his sister, Dorothy, some two years younger, attended the party. When it broke up about one-thirty at night, they invited Douglas Isham and his sister, Louise, to spend the balance of the night at the Crawford home. Douglas was about the same age as the Crawford boy. Louise was eleven years old. The four of them, walking were going to the Crawford home on the road which ran by appellant's house. The Isham boy and the Crawford girl were walking together, as were the Crawford boy and Louise. Appellant's house was some ten or twelve steps from the road. As the two couples reached appellant's house Douglas said, "I wonder if anybody is at home," and Armand replied, "I'll pitch a rock over there and see." He threw a rock on the roof of the house. It rolled down, making considerable noise. The parties continued walking down the road and when Armand and Louise had reached a point some thirty or forty steps beyond appellant's house, a gun fired from the direction of the house and Louise cried out that she was shot. It was discovered that two buckshot had struck her, one of them inflicting a fatal wound. She was taken to Temple, and operated on, but died four days later. The evidence showed the night to have been a bright moonlight night and that the young people could have been seen down

the road from a point opposite appellant's house. When it was found that Louise had been shot, her brother went back to appellant's house and called to him several times. When he came out Douglas asked him what he was shooting at, to which appellant replied that he was shooting at an owl. Upon being advised that he had shot Louise, appellant appeared much disturbed, called to his wife, telling her what he had done, and said he did not even know the young people were anywhere near, and asked Douglas where they were at the time the shot was fired. He pointed out to Douglas where he claimed to have been standing when he fired and where the owl was in the tree. He also said they must go and tell Louise's father about it. He started to her father's house with his wife and Armand Crawford, but they finally went to the house of the grandfather of the little girl where appellant told him about the same thing he had told Douglas. The testimony of Douglas was that if appellant had fired at an owl from the position claimed by appellant, he would have been shooting north; that he and the other young people were down the road east. The next morning after the shooting parties went to appellant's house and he pointed out to them where he claimed to have been standing when he fired the shot and where he claimed the owl was in the tree. In this position he would not have been firing towards where the young people were. These witnesses went down the road and at a point not far from where the little girl was when the shot was fired they found on some small bushes where a shot had cut a limb about four feet from the ground, and bruised another limb about five feet from the ground. According to these witnesses appellant later claimed to have been mistaken as to where he was standing and located himself at another point from which the shot would have gone more nearly in the general direction of where the young people were. Upon the trial appellant claimed that he never heard any rock strike the house and that that was not what called him out, but that he was attracted by a disturbance among the chickens which roosted in a tree which was over the road that ran by his house; that owls had been bothering them and that he fired at what he thought was an owl in the tree without knowing that the young people were anywhere about.

Appellant brings forward sixteen bills of exception. We have examined all of them and think none present error, at least not such as called for a reversal, save bills of exception 11 and 12. They may be considered together.

Bill of exception No. 11 shows that upon cross-examination of appellant, the state, over objection, was permitted to elicit from appellant that he did not know where the little girl, Louise Isham, was buried and that he did not attend her funeral. Bill No. 12 shows that in the district attorney's closing argument he called the jury's attention to the appellant's admission that he did not attend the funeral and drew the conclu-

sion that the reason was because he had shot Louise with malice afore-thought, with a heart regardless of social duty and fatally bent on mischief. This argument was also objected to by appellant's counsel.

We take the following quotation from McGuire v. State, 10 Texas App., 125: "Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis,—a pertinent hypothesis being one which, if sustained, would logically influence the issue. Hence it is relevant to put in evidence any circumstance which tends to make the proposition at issue either more or less probable. Whatever is a condition, either of the existence or of the non-existence of a relevant hypothesis, may be shown. But no circumstance is relevant which does not make more or less probable the proposition at issue."

The proposition at issue was whether appellant intentionally killed Louise Isham. Did proof that he failed to attend her funeral carry any probative force making more or less probable the truth of the state's contention that the killing was intentional? Underhill announces a just and reasonable principle regarding the question to be that if the relations between the parties were such that accused would naturally attend deceased's funeral, it may be shown that he did not do so. Underhill's Crim. Ev. (3rd Ed.), sec. 502. The authorities from different states cited under the text are not uniform in application of the principle announced. The only two cases from our own court bearing upon the point which have come to our attention are Mansel v. State, 79 Texas Crim. Rep., 48, 182 S. W., 1137, and Washington v. State, 46 Texas Crim. Rep., 184, 79 S. W., 811. Both of them support the proposition that the evidence complained of should have been excluded. We cite the latter case as indicating the trend of this court's view regarding the question now before us, but do not desire to be understood as approving the holding that similar evidence there was inadmissible. Deceased in that case was the wife of accused and the relation was such that in our opinion the evidence there complained of was admissible.

The relations between the appellant and the family of deceased were friendly, but no such close association between them was shown as would lend any probative force to appellant's failure to attend the little girl's funeral. He had already been arrested and knew that he was being charged with the intentional killing of the child. It would appear therefore that appellant had every incentive to remain away from the funeral. His presence there would doubtless have subjected him to as severe criticism as his absence drew from the district attorney in his closing argument. The use made in argument of the evidence which we think should not have been received intensified the harm in admitting it in the first instance.

For the error discussed, the judgment is reveresd and the cause remanded. *Reversed and remanded.*

## CONCURRING OPINION.

MORROW, Presiding Judge.—Whether the proof that the appellant did not attend the funeral of the deceased was admissible in evidence under the state of the record is doubtful. If the testimony was not admissible, it cannot be said that the use made of it in argument was not harmful. My associates have divergent views upon the subject mentioned. The legal questions involved are close to a degree that the accuracy of neither of the conclusions reached by my brethren is, in my opinion, susceptible of demonstration. Under the circumstances, I am in doubt as to what disposition should be made of the appeal, and feel constrained to resolve the doubt in favor of the accused. I therefore concur in the reversal of the judgment of conviction.

## DISSENTING OPINION.

LATTIMORE, Judge.—I cannot sanction the reversal of this case upon the shadowy possibility of harm to the accused from proof of his admission that he did not attend the funeral of the child whom he had slain, seemingly in anger because of the childish prank of a group of young folks, one of whom had thrown a rock upon the roof of appellant's house at night. Immediately after the rock was thrown appellant fired a shot gun loaded with buckshot down the road along which the group were going. The falsity of his story that he shot at an owl in a tree, was shown, and his guilt was overwhelmingly demonstrated. The fact that the jury were not prejudiced or inflamed by the evidence or argument complained of, but that they exhibited mercy toward appellant probably because they thought he shot in anger, is clearly demonstrated by the verdict which only inflicted a penalty of five years. It seems almost humanly impossible to avoid slight errors in the conduct of trials of criminal cases, but in cases where guilt is evident, and the law of the case has been substantially followed, in the opinion of the writer reversals should not be had.

When appellant was asked if he attended the child's funeral, the only objection made was that this was immaterial and irrelevant. His attorney did not even think enough of it to object on the ground that it might create prejudice. Under all the authorities such an indefinite objection calls for no favorable action by the trial court, and no error was committed in overruling such objection. As said by us in Thompson v. State, 90 Texas Crim. Rep., 21: "A bill of exception so framed as to compel this court to search the statement of facts in order to find out what is therein referred to and meant, is ordinarily held by us insufficient and defective."

In the argument the district attorney said: The defendant says he did not attend the funeral of the little girl, and I wonder why,—a heart

regardless of social duty and fatally bent on mischief." This was objected to on the ground that there was no evidence before the jury warranting such argument, and that such remarks were inflammatory and prejudicial. Appellant's counsel did not think enough of this to even ask the court to instruct the jury not to regard it, nor was there any special charge presented so requesting. There was evidence before the jury to support the argument. That same did not prejudicially affect appellant's rights or influence the jury, is established by the small penalty inflicted, especially in view of facts surrounding the shooting which were themselves most inflammatory. A mature man in his house in the nighttime,—a group of children passing by,—one throws a rock on the roof,—they pass on a short distance,—a gun fires once from the door of the house,—the little girl is shot,—appellant explains: "I shot at an owl in a tree,"—the tree *indicated is found to be in a different direction from the door* than are the children,—upon examination not a twig of said tree had been struck by a shot,—down the road toward where the child was shot, twigs of bushes were found severed. These facts were before the jury in addition to the fact that he shot buckshot at a group of children for no other reason except their indulgence in a childish prank,—which proof together with a false explanation all so overwhelmingly indicates a heart regardless of social duty and fatally bent on mischief, that when it appears that a penalty of only five years has been inflicted, it is difficult to believe that any substantial ground exists for the supposition that the argument inflamed or prejudiced the jury. In the opinion of the writer such contention is wholly insufficient to call for a reversal of this case.

I most respectfully record my dissent.