## CHARLIE GREEN v. THE STATE.

No. 14482. Delivered January 13, 1932.
Rehearing Denied March 9, 1932.

The opinion states the case.

*Anderson & Woods,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, Judge.—Conviction for murder; punishment, five years in the penitentiary.

After an argument between appellant and deceased in a restaurant, a difficulty presently ensued, on the porch of the building, in which deceased was cut three times, one cut, a stab wound, going through the walls of the abdominal cavity and penetrating the stomach. The cutting was on Tuesday night, and deceased died the following Sunday, peritonitis having set in.

Inasmuch as appellant on cross-examination brought out from the first state witness, and later from others, the fact that appellant came to the hospital where deceased was taken for treatment and there said that he wanted to pay the doctors' and hospital bills; also the further fact that when a witness in his own behalf appellant swore that he and deceased were close friends, and that if he cut deceased on the occasion in question he did not know it at the time, and that he had offered to pay the expenses,—all evidently for the purpose of rebutting any inference of malice, ill-will or evil intent,—we would not seriously think it any error for the state thereafter to ask, on cross-examination, the mother of deceased, who testified for the defense,—if appellant had paid the funeral expenses of deceased, which question she answered in the negative. It is not of moment, but the testimony of this witness on the point, as revealed by the statement of facts, is that "Charlie Green has never paid me a dime for the expenses of Votie's illness; his funeral expenses were paid by the K. of P. Lodge." It would appear reasonable that the state might thus show that appellant's deeds and words were not in accord, and that the former rebutted and overcame the latter. It might also be reasonable to hold that in case appellant had paid such expenses, this fact might shed light on the motive of the mother of deceased in giving testimony favorable to appellant. We are of opinion the cross-examination was permissible. The facts, and hence of course the law applicable, are wholly variant from those in Fowler v. State, 118 Texas Crim. Rep., 419, 38 S. W. (2d) 97, to which our attention has been called.

The hypothetical question by appellant to Dr. Marberry, the objection by the state to which was sustained, appears to have no fair foundation in any statement of facts herein. It appears without apparent question that Dr. Shirley, the colored doctor to whose office deceased was carried, gave what he called first aid to a man in a state of near collapse by sewing up the wound made by the knife of appellant in the walls of the abdomen, in which wound Dr. Shirley said he put a wick drainage consisting of a piece of gauze,—and that deceased was at once thereafter taken in an ambulance to the hospital of Dr. Rush in the same city, and that Dr. Rush at once examined him, and after cutting the stitches of the wound sewed up by Dr. Shirley, discovered that the stomach as well as the abdomen had been penetrated by the knife, and that contents of

the stomach were leaking out.. No witness testified that these operations were two hours apart, nor did Dr. Rush venture a suggestion as to how long the external wound had been sewed up when deceased was brought to the hospital, except to say that it was "rather recently." He did testify "The bleeding would have been the same whether or not he had been sewed up." He was the only physician who saw deceased upon his arrival at the hospital, and he nowhere says that the wound was improperly sewed up. He corroborated Dr. Shirley in saying that deceased was in such condition of shock as that he could not stand much.

Two bills of exception complain of the court's action in sustaining objections to questions propounded to Dr. Shirley who had testified that he put a piece of gauze, commonly called a wick drainage, in the abdominal wound which he treated, one of the questions being "If Dr. Rush says the wound was sewed up tight, what would you say about it?" The other question was of similar import. There is no doubt but that such question was merely argumentative and called for no fact. The remaining bill was taken to the argument of the district attorney who said: "Ah! Gentlemen of the Jury, such a friend that Charlie Green is. It might not be a negro next time." The court qualifies this bill of exception and says the argument was made in reply to that of appellant's counsel.

No error appearing, the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant complains of the failure of the court to give his special charge number seven. Said charge does not appear in the record save as it is copied in appellant's amended motion for new trial. To call for review of the court's action in refusing a special charge, exception must be reserved. This may be done by an exception noted on the charge itself over the trial judge's signature, or by a formal bill reserving the point. Linder v. State, 94 Texas Crim. Rep., 316, 250 S. W., 703; Cunningham v. State, 97 Texas Crim. Rep., 624, 262 S. W., 491; Benson v. State, 105 Texas Crim. Rep., 268, 287 S. W., 1097; Arnold v. State, 118 .Texas Crim. Rep., 624, 39 S. W. (2d) 49. In neither of the ways suggested was exception taken to the refusal of the special charge.

Complaint is again urged that the trial court failed to respond to an objection to the instruction given the jury, which objection is as follows: "Because said charge fails to instruct the jury that in as much as the instrument with which the homicide was alleged to have been committed was not shown to have been a deadly weapon either per se, or the law as to the manner in which it was used, that the defendant would be presumed to not have acted with malice and therefore could not be convicted of any higher offense than aggravated assault." We think the objection

did not call attention to a correct principle of law. In this connection we are referred to the case of Miller v. State, 112 Texas Crim. Rep., 125, 13 S. W. (2d) 865. In that case the killing was with a bottle. Nowhere in the charge in that case did the court require the jury to find that the accused intended to kill. In the present case the jury were told that whoever "voluntarily" killed another would be guilty of murder. Then followed this instruction: " 'Voluntarily' as herein used, means in a voluntary manner; one's own will. An act is voluntary when done by design, with intent, intentional, purposed, intended." In applying the law the jury were told that before appellant could be convicted of murder they must find beyond a reasonable doubt that he "voluntarily" killed deceased.

Upon the trial an issue arose which made it necessary for the court to instruct on the question of whether the wound produced the death of deceased, or whether death resulted from gross neglect or improper treatment of the wound. This necessarily, under the facts, called for an instruction on assault to murder, and aggravated assault. In paragraph thirteen of the charge the court defined an assault and battery in the words of the statute (article 1138, P. C.). Appellant directed an exception at said paragraph upon the ground, among others, that the court did not in such paragraph or anywhere in the charge define a "deadly weapon." We observe that aggravated assault was not submitted on the theory that the assault was committed with a deadly weapon, but upon the theory that a serious bodily injury was inflicted upon the person assaulted. Subdivision 7, article 1147, P. C. The jury were told, in substance, that, if appellant, without malice aforethought, and with no intent to kill, assaulted deceased with a knife, he would be guilty of an aggravated assault only, apparently without regard to the character of the knife.

We have been at some loss to appraise the objections mentioned, but regard them as pointing out no serious errors in the charge when considered in its entirety under the theories upon which the case was submitted.

The motion for rehearing is overruled.

*Overruled.*