HOWARD M. BAYLOR v. THE STATE.

No. 23923. Delivered February 18, 1948.

*Leonard Brown* and *Archie S. Brown,* both of San Antonio, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

For the murder of Buster Lott, appellant has been condemned to serve thirty-five years in the penitentiary.

Deceased was employed as an informer for the Federal Bureau of Narcotics—that is, one who gathers information and makes purchases of evidence from those engaged in handling drugs. He was attached to the Dallas and Fort Worth offices and had been so employed for about nine months prior to his death on August 24, 1946.

About two months prior to the killing, appellant and deceased were seen together at different times and places in Fort Worth. The last occasion resulted in narcotic agents arresting and taking appellant before the United States Commissioner, who, some days thereafter, conducted a preliminary hearing. The record does not reflect why appellant was arrested or that a complaint was filed against him, nor does it reflect the result of the preliminary hearing before the commissioner.

About two o'clock on the afternoon of the day of the killing, deceased appeared at the home of the witness Gillam in San Antonio, Texas. After having a couple of drinks with him, he borrowed from Gillam two dollars with which to get something to eat. He left the Gillam residence to go to a nearby cafe. After deceased left, Gillam called appellant, who lived in an adjoining house, to come to the telephone at his house. Appellant remained in the Gillam home about thirty minutes, during which time Gillam told appellant that deceased—referring to him as that "hop head Lott"—was in town; that he had gone to a cafe and was going to leave town. Appellant's only reply was in the nature of a question, "Lott's in town?" Appellant returned to his room, after which deceased returned to the Gillam home. This was about four o'clock in the afternoon. Gillam and his wife then went to vote, leaving Nelson (appellant's room-mate), deceased, and a young lady by the name of Bainbridge in their house. When Mr. and Mrs. Gillam returned home, they found the above-named parties still there. Mr. Gillam left a short time thereafter to go to work at six o'clock. Such was the situation just prior to the killing.

According to the witness Nelson, he and deceased were seated in the living room when appellant knocked on the door. Nelson answered, spoke to appellant, and invited him in. About that time, Nelson was either called to or went to the telephone to make a call. At any event, he left the room. Almost immediately he heard a scuffle, which caused him to return to the room. He saw deceased standing with his hands in a raised position, and appellant facing him with his hands down. He told them they could not fight in there, and pushed or shoved them out the door. In doing so, Nelson got blood on his shirt. A spot of blood was on the floor and also some spots of blood were later found on the ceiling.

Deceased was next seen by a policeman to stumble and fall in the street a short distance from the Gillam residence. He

was bleeding profusely from a wound in the neck. An ambulance was summoned and deceased was taken to the hospital, where he died shortly thereafter from shock caused by the loss of blood.

The attending physician described the injury as a wound "about an inch long along the lateral side of his neck, right at the side of the big muscle, and he was bleeding profusely at the time * * *. There is a large blood vessel in the region where the wound was and the spurting of the blood would indicate a severed artery."

There was testimony indicating that appellant left the Gillam home after the difficulty, hailed a taxicab, and asked to be driven to the Mission Road just north of Mitchell Street.

The State offered in evidence the voluntary confession of appellant, in which he admitted striking the deceased with a knife in self-defense from the actual as well as apparent attack of the deceased, as also threats.

No description of the knife so used is found in the evidence; the circumstances indicate it was a small pocket knife.

Outside of the confession, there was testimony showing threats by the deceased, which were communicated to appellant prior to the killing. The appellant did not testify.

It appears to have been the theory of the State that the killing was motivated because of deceased's connection with the Bureau of Narcotics. If such be the case, it is shown only inferentially; there is no testimony sufficient to establish such a fact.

With this statement of the facts, we come to a determination of the question which is decisive of this appeal.

Appellant's guilt before the jury was under the following instruction, viz.:

"Now, if from the evidence you believe beyond a reasonable doubt that the defendant, Howard M. Baylor, not in his own self-defense, on or about the 24th day of August, 1946, in the County of Bexar and State of Texas, with malice aforethought, did voluntarily kill the said Ellis Buster Lott by cutting the said Ellis Buster Lott with a knife and that said knife was a deadly weapon as herein defined as alleged in the indictment, you will

find the defendant guilty of murder and assess his punishment at death or confinement in the penitentiary for life or for any term of not less than two years."

A similar charge was given, applying murder without malice.

In connection with said charges, the jury were also instructed:

"A deadly weapon is one which, from the manner used, is calculated or likely to produce death or serious bodily injury."

The practical and working effect of the charge as related to murder with malice, of which offense appellant was found guilty, is that appellant would be guilty if he voluntarily and with malice killed the deceased by cutting him with a knife—which in the mode and manner of its use was a weapon calculated to produce death or serious bodily injury.

The trial court nowhere required the jury to find, in order to convict, that appellant had the intent to kill. A proper exception was reserved to the charge for the failure to so instruct the jury.

The issue of aggravated assault was not submitted nor was the jury instructed as to a lack of intent to kill. Appellant's only exception was that as above stated.

Thus, the question is whether, under the facts here presented, the intent to kill is an essential element of the crime of murder—as to which, appellant affirms and the State denies. Also the State insists the intent to kill arises only as a defense—that is, by reducing the offense to aggravated assault or acquitting of murder upon a finding of a lack of intent to kill.

Here, the instrument or weapon used was not a deadly weapon, per se. It became deadly only by the mode and manner of its use. This is a material fact which should be kept in mind.

Under our statute as it presently exists (Art. 1256, Vernon's P. C.), it is now murder to "voluntarily kill any person." The term "voluntarily," as there used, has been consistently construed to mean "intentionally." Doggett v. State, 130 Tex Cr. R. 208, 93 S. W. (2d) 399; Watson v. State, 148 Tex. Cr. R. 589, 189 S. W. (2d) 1020; Moseley v. State, 196 S. W. (2d) 822.

The case of Miller v. State, 112 Tex. Cr. R. 125, 13 S. W.

(2d) 865,.construing the present murder statute, is deemed in point and here controlling. In that case, the death of the deceased was caused by his being struck on the head with a soda pop bottle, a weapon not deadly, per se. The accused contended that, under such circumstances, the intent to kill was an essential ingredient of the offense of murder. After an extended discussion of the matter, that contention was sustained. The holding in the Miller case has not since been changed, modified, or overruled, but consistently followed. See: Arocha v. State, 118 Tex. Cr. R. 391, 39 S. W. (2d) 1097; Green v. State, 120 Tex. Cr. R. 355, 46 S. W. (2d) 1001; Johnson v. State, 125 Tex. Cr. R. 381, 68 S. W. (2d) 202; Jones v. State, 127 Tex. Cr. R. 227, 75 S. W. (2d) 683; Lyons v. State, 138 Tex. Cr. R. 375, 136 S. W. (2d) 835; Sullivan v. State, 146 Tex. Cr. R. 79, 171 S. W. (2d) 353; Griffin v. State, 198 S. W. (2d) 587.

It appears, therefore, that where a murder is committed by the use of a weapon not deadly, per se, and not under circumstances controlled by some specific statute by which the intent to kill is presumed, it is now the settled law of this State that the intent to kill is an essential element of the crime of murder.

It follows, therefore, that under the facts here presented, appellant was entitled to have the jury instructed as to the intent to kill—either as an essential element of the State's case or as reducing the offense to aggravated assault.

Having so concluded, we pass to a determination of the State's contention that the charge, as given together with the jury's finding thereunder, satisfied or rendered inapplicable the rule stated.

It is well settled that when the weapon used in effecting an unlawful killing is a deadly weapon, per se, the intent to kill is presumed, as a matter of law. Hence, in such cases, no charge is required as to the intent to kill—and this, even though the accused testifies to a lack of intent to kill. Art. 45, P. C.; Miller v. State, supra; Barr v. State, 146 Tex. Cr. R. 178, 172 S. W. (2d) 322, and authorities there cited.

The State contends that because the jury found that appellant killed deceased by cutting him with a weapon made deadly by the mode and manner of its use, the intent to kill should also be presumed. In other words, the State contends that the presumption contained in Art. 45, P. C. extends to both a deadly

weapon, per se, and one deadly by the mode and manner of its use.

Art. 45, P. C. reads as follows:

"The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

It is from this statute that the presumption of an intent to kill arises, in a murder case, by the use of a deadly weapon, per se—that is, a weapon which of itself is deadly or one which would ordinarily result in death by its use. It is the weapon, itself, that characterizes it as a deadly weapon, per se. On the other hand, a weapon not of and within itself deadly or one which would not ordinarily result in death by its use may become a deadly weapon by the mode and manner of its use. It is the use made of such a weapon that characterizes it as deadly. Therein lies the distinction between a deadly weapon, per se, and a weapon made deadly by the mode and manner of its use. One is deadly of and within itself; the other is deadly only because of the mode and manner used.

The intent presumed by Art. 45, P. C. is a legal presumption against the accused and should be strictly construed, because it is at variance with and antagonistic to the paramount presumption of innocence which continues throughout the trial of every criminal case. For that reason, said article should be applied only when its express provisions so authorize. The terms thereof cannot be extended to include conditions and circumstances not clearly covered by the statute itself. The intent to kill which is presumed in a murder case by said article arises only when the weapon "used is such as would ordinarily result in the commission" of that crime. This has reference to the weapon, itself. To extend that statute to include a weapon which of and within itself is not such as would ordinarily result in the commission of murder would be to write into that statute something that is not there. This the Constitution expressly precludes the court from doing.

We cannot bring ourselves, therefore, to the conclusion that a weapon deadly only because of the manner of its use and not deadly of and within itself is not within the presumption mentioned in Art. 45, P. C. This conclusion is supported not only for the reasons stated but also by establishing precedents.

Prior to the passage of our present murder statute, in 1927,

Art. 1261, P. C. was a part of the statute law of this State, and read as follows:

"The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the defendant; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears."

This statute was expressly repealed at the time of the enactment of our present murder statute.

Soon thereafter there came before the court the case of Stroud v. State, 120 Tex. Cr. R. 466, 46 S. W. (2d) 689. Stroud had been convicted of murder by cutting the deceased with a knife, a weapon not deadly, per se. The prosecution arose under our present murder statute. In that case, the trial court, among other things, instructed the jury to the effect that if the knife used by the accused was, from the manner used, an instrument calculated to produce death or serious bodily injury, the presumption of an intent to kill would exist. Said charge was held to be error because the statute (Art. 1261, P. C.) authorizing the presumption mentioned had been repealed.

No legal difference is discerned between that holding and the instant case. In the Stroud case, the trial court, in effect, told the jury that if the killing occurred by the use of a weapon made deadly by the mode and manner of its use, then the intent to kill was presumed. Here, the trial court, in effect, told the jury that if appellant killed deceased with a weapon made deadly by the mode and manner used, he would be guilty of murder, thereby determining that the intent to kill had been established as a matter of law. If the charge here given was correct, so also was that in the Stroud case. This court held to the contrary in the Stroud case. The holding in that case was followed in Jones v. State, 120 Tex. Cr. R. 22, 48 S. W. (2d) 631.

It follows from what has been said that the charge as given, together with the jury's finding of guilt thereunder, did not obviate the necessity of a finding by the jury of an intent to kill, in order to convict appellant of the crime of murder.

Bills of exception appear complaining of the receipt in evidence of the testimony showing the arrest of appellant by the narcotic agents and their taking him before the United States Commissioner, who conducted a preliminary hearing. Unless the

State is able to show the materiality of this testimony, such as bearing upon intent or motive, same should be excluded upon another trial.

For the failure of the trial court to require a finding of an intent to kill or to charge upon aggravated assault or lack of intent to kill, the judgment of the trial court must be reversed and the cause remanded. It is so ordered.

Opinion approved by the Court.