Rafael **RUIZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49739.

Court of Criminal Appeals of Texas.

June 11, 1975.

Abel Toscano, Jr., Harlingen, for appellant.

Fred Galindo, Dist. Atty., Peter C. Gilman, Asst. Dist. Atty., Brownsville, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION ON THE APPELLANT'S MOTION FOR REHEARING

DALLY, Commissioner.

Our prior opinion is withdrawn. This is an appeal from a conviction for the of-

fense of murder; the jury assessed the appellant's punishment at imprisonment for fifteen years. The appellant complains that: evidence of an extraneous offense was erroneously admitted; the jury was improperly instructed concerning the purpose for which the extraneous offense was admitted; there was a failure to instruct the jury at the guilt-innocence stage of the trial on the definition of murder with malice, murder without malice, and on specific intent to kill.

The extraneous offense about which complaint is made is the appellant's alleged rape of the deceased's daughter. During the cross-examination of the appellant he denied that he had raped the deceased's daughter. During the State's rebuttal the daughter testified that the appellant had raped her when she was sixteen years old, and that this had caused her to run away from her home where the appellant was living with her mother.

The appellant was indicted and tried for the offense of murder with malice of Sara Castillo who he testified "was my woman." The offense was alleged and proved to have been committed on August 4, 1973. While he was lawfully married to another woman the appellant lived with Sara Castillo for over five years; then he and Sara Castillo separated about one year before her death. The appellant by his testimony implied that his separation from Sara Castillo was caused by her having an affair with Napoleon Ruiz. The appellant testified that between 6:00 and 7:00 a. m. on the morning of her death he saw Sara Castillo leaving the office of Napoleon Ruiz clothed in a kimono. He saw Ruiz get in his pickup and drive away and Sara Castillo get in her vehicle and drive away. The appellant followed Sara Castillo; when he drove alongside of her car she rolled the window down and shouted: "If you don't like it, you dumb ass," and then laughed. The appellant testified this made him feel tense and "I lost my feeling and then I took out the gun and I shot her just to scare her so to speak." The appellant also testified that Sara Castillo's daughter had told him that her mother had been seeing Napoleon Ruiz.

This testimony concerning his reason for the separation and the relationship between the parties was admissible to show the appellant's state of mind at the time he shot the deceased. See Art. 1257a, Vernon's Ann.P.C. From the evidence offered by the appellant, not all of which has been summarized, it appears he was either seeking an acquittal on the defense of insanity or a reduction of the punishment by showing that the alleged murder was committed without malice. The appellant was attempting to show that his act in shooting the deceased was done in sudden passion or while he was rendered insane by the deceased's affair with Napoleon Ruiz. The rule applicable to the complained of testimony has been well stated as follows:

"It is always relevant and admissible for either the State or defendant to show the sexual, illicit, or companiable relationship existing between the defendant or the deceased and a third party, as well as each other, when such fact tends to show motive or shed light on the transaction and issue. When such testimony is gone into by either party in a proper manner, the other party may, where he is able to do so, rebut such testimony." [Numerous citations omitted.] 4 Branch's P.C.2d ed. 558–559, Sec. 2201.

It is the State's theory supported by the deceased's daughter's testimony that Sara Castillo separated from the appellant because he raped her daughter, and that his act in shooting the deceased was deliberate and in revenge for "throwing him out of the house." This testimony of the daughter was admissible and the cross-examination of the appellant was legitimate to rebut the testimony the appellant offered to show his relationship with the deceased and his state of mind at the time the deceased was shot. Art. 1257a, V.A.P.

C., and see Sherman v. State, 428 S.W.2d 338 (Tex.Cr.App.1968). The complained of evidence was admissible even though it showed an extraneous offense. Since the admission of the evidence was proper to rebut that offered by the appellant, there was no need for a charge limiting the jury's consideration of the testimony. The error in giving a charge limiting the jury's consideration of the testimony to impeachment purposes was an error against the state and the appellant is therefore in no position to complain. See Sherman v. State, supra. During the trial the appellant asked the Judge to limit the jury's consideration of the testimony and a limiting instruction was given, and then the court submitted a written limiting instruction. The appellant's objection to such charge did not indicate why he thought it was defective. No error is shown.

◼ Next we will consider the appellant's complaint that the trial court refused to charge the jury at the guilt-innocence stage of the trial on the definition of malice aforethought and murder without malice. The court did charge the jury on murder with and without malice at the punishment stage of the trial. In Brazile v. State, 497 S.W.2d 302 (Tex.Cr.App. 1973), it was said:

> "All voluntary killings are murder, and the presence or absence of malice relates only to the punishment. Thus it would appear proper to submit the issue of malice only during the punishment stage."

See also Foster v. State, 493 S.W.2d 812 (Tex.Cr.App.1973), and the cases there cited. Cf. Marrero v. State, 500 S.W.2d 818 (Tex.Cr.App.1973); Jones v. State, 504 S.W.2d 906 (Tex.Cr.App.1974); Carver v. State, 510 S.W.2d 349 (Tex.Cr.App.1974);

Rodriguez v. State, 513 S.W.2d 594 (Tex. Cr.App.1974); Armentrout v. State, 515 S.W.2d 297 (Tex.Cr.App.1974). The court did not err in refusing to instruct the jury on the law of murder with and without malice at the guilt-innocence stage of the trial.

◼ We will now consider the appellant's remaining complaint that the court erroneously refused to charge the jury on specific intent to kill. When a weapon deadly per se is used in a deadly manner and death results, even though the defendant testifies that he did not intend to kill the victim, there is no need to give a charge on specific intent to kill or aggravated assault. Art. 45, V.A.P.C.;[1] Hadnot v. State, 110 Tex.Cr.R. 109, 7 S.W.2d 566 (1928); Barr v. State, 146 Tex.Cr.R. 178, 172 S.W.2d 322 (1943); Smith v. State, 411 S.W.2d 548 (Tex.Cr.App.1967); Schulz v. State, 446 S.W.2d 872 (Tex.Cr. App.1969); Dickson v. State, 463 S.W.2d 20 (Tex.Cr.App.1971); Stallings v. State, 476 S.W.2d 679 (Tex.Cr.App.1972); Gamblin v. State, 476 S.W.2d 18 (Tex.Cr.App. 1972); Stills v. State, 492 S.W.2d 478 (Tex.Cr.App.1973); Hargrove v. State, 501 S.W.2d 878 (Tex.Cr.App.1973).

In Baylor v. State, 151 Tex.Cr.R. 365, 208 S.W.2d 558 (1948), it was said:

> "It is well settled that when the weapon used in effecting an unlawful killing is a deadly weapon, per se, the intent to kill is presumed, as a matter of law. Hence, in such cases, no charge is required as to the intent to kill—and this, even though the accused testifies to a lack of intent to kill. Art. 45, P.C.; Miller v. State [112 Tex.Cr.R. 125, 13 S.W.2d 865 (Tex.Cr.App.1929)]; Barr v. State, 146 Tex.Cr.R. 178, 172 S.W.2d 322, and authorities there cited."

I. Art. 45, V.A.P.C., provides:

"The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

Compare with V.T.C.A., Penal Code, Sec. 2.05.

In prosecutions for assault with the intent to murder, unlike prosecutions for murder, if the defendant testifies he did not intend to kill the victim even though the weapon used is a weapon deadly per se used in a deadly manner it is necessary to charge the jury on specific intent to kill and on aggravated assault if there is a proper request for these charges. Art. 45, V.A.P.C., does not apply if the attack does not result in death and the use of a weapon deadly per se in a deadly manner raises only a rebuttable presumption of fact. Watts v. State, 151 Tex.Cr.R. 349, 207 S. W.2d 94 (1947); Barr v. State, supra; Thompson v. State, 521 S.W.2d 621 (Tex. Cr.App.1974).

In Watts v. State, supra, where the prosecution was for assault with the intent to murder, it was said:

"In the light of appellant's affirmative testimony that he did not intend to kill the injured party but fired only in self defense and to stop the injured party, together with the other facts in evidence, we are constrained to conclude that appellant was entitled to have the jury instructed, in accordance with his request, to the effect that if he shot with no intent to kill, he could not be guilty of assault with intent to murder.

\* \* \* \* \* \*

". . . It must be remembered that the intent to kill is an essential element of the crime of assault with intent to murder, without which that offense is not made out. Also, the propriety or necessity of giving defensive instructions in a criminal case rests alone upon whether there be testimony raising such issues. The source from which the testimony comes cannot be looked to. This has always been the rule, although the issue is raised solely and alone by the testimony of the accused. The rule is founded upon the proposition that the weight to be given to the testimony rests alone with the jury. In order that no confusion might arise, it should be pointed out that the rule here announced appears to be different where death results and the prosecution is for murder. See Hadnot v. State, 110 Tex.Cr.R. 109, 7 S. W.2d 566; Barr v. State, 146 Tex.Cr.R. 178, 172 S.W.2d 322."

The present prosecution is for murder; although the appellant testified he only intended to "scare" the deceased he admitted shooting at her at close range with a pistol. A pistol is a weapon deadly per se. Hargrove v. State, supra; Valle v. State, 438 S.W.2d 583 (Tex.Cr.App.1969); Taylor v. State, 470 S.W.2d 693 (Tex.Cr. App.1971); Barr v. State, supra; Stills v. State, supra.

It follows that the court did not err in refusing to submit to the jury the specially requested charge on the specific intent to kill.

The appellant's motion for rehearing is overruled and the judgment is affirmed.

Opinion approved by the Court.